SAVOY, Judge.
Plaintiff brought suit against his employer under the Federal Employers’ Liability Act, 45 U.S.C.A. § 51 et seq., for an injury *678 he sustained in the performance of his duties as a freight car inspector.
The accident occurred on September 23, 1964, at the defendant railroad’s yards in Lake Charles, Louisiana. The door of a freight car fell on plaintiff as he and a coworker were attempting to open it.
Under Section 53 of the hereinabove-mentioned Act, the amount awarded to the employee is reduced proportionate to the degree of the employee’s contributory negligence.
The lower court found plaintiff to be con-tributorily negligent to the extent of fifty per cent and awarded plaintiff a total of $27,590.00, diminished by the contributory negligence to $13,795.00, from which judgment plaintiff has perfected this appeal.
Both sides agree that the issues presented to this Court for decision are the extent of plaintiff’s contributory negligence, if any, and the quantum of damages.

Plaintiffs Contributory Negligence.

The factual background is as follows. Each day plaintiff and his co-worker were assigned a string of approximately twenty freight cars to inspect and clean. The two men were officially classified as freight car inspectors, but the job included cleaning and washing out the cars. Customarily, they first walked along the string of cars, inspecting them visually from the outside and opening the doors before beginning the cleaning process.
On the morning in question, they were so proceeding. The door of the particular car involved was latched and sealed with a small metal seal similar to ones found on utility meters and the like. They removed the seal and unlatched the door, but had difficulty opening it. Plaintiff’s co-worker inserted a crowbar and attempted to free the door as plaintiff operated a handle used for the purpose of jacking the door up slightly so that it would slide along the side of the car, thus opening. As they were so engaged, the door, made of metal and weighing several hundred pounds, fell over from its vertical position and struck plaintiff.
While there is much discussion in the record and in the parties’ briefs concerning what caused the door to fall, it appears most likely that the top edge of the door was not in a guide rail affixed to the side of the car to hold the door in place and allow it to slide back and forth for opening and closing.
The real question, however, is whether the fault should have been discovered in the process of the inspection. Plaintiff maintains that the entire process of inspection and cleaning did not allow time for more than a casual visual exmination of the outside of the cars; that the side of the freight car on which this particular door was located was elevated slightly so as to allow water to run out of the car during the washing process, thus making it more difficult to have seen any defect in the top of the door; that in walking along the side of the cars they were actually too close to them to be able to see the top part of the door too clearly; that the fact that the door was latched and sealed led plaintiff to believe there would not be anything wrong with the door itself; that, in any event, there was nothing he could have seen to indicate the defect. Defendant, on the other hand, maintains that for the door to have been outside of its guide rail it would necessarily have protruded from the side of the car, and be visible; that plaintiff had the duty to give the car and the door more than a cursory visual examination; that, in any event, he should have noticed the condition of the door as he approached the car from one end even if it would have been difficult to see the defect when standing right alongside the door.
There appears to be no jurisprudence presenting a fact situation as we have here, by which we might be guided. However, we see no manifest error in the lower court’s finding that plaintiff was contribu-torily negligent to the extent of fifty per cent. It was plaintiff’s job and duty to first *679 inspect and then to clean the cars, for if the inspection revealed any reason for a car to be “bad ordered”, it was not in that case cleaned, but was sent in for repair. The inspection process was certainly no less important than cleaning. Under the facts here presented, plaintiff and his co-worker were on their own, so to speak, charged with the two functions of the job. We cannot excuse plaintiff entirely for failing to note or find something that was an integral part of the inspection process.

Quantum of damages.

Four physicians testified in the case. All agreed that plaintiff had sustained a compression fracture of a lumbar vertebra, apparently the third vertebra.
Dr. Norman P. Morin, an orthopedic surgeon, stated that he considers plaintiff permanently disabled from returning to his job, and that he would have to confine himself to a sedentary occupation in order to minimize pain he would otherwise experience.
Dr. George P. Schneider, an orthopedic surgeon, also felt that plaintiff is permanently disabled for manual labor, and that he would experience varying degrees of pain or discomfort permanently.
Dr. Steve Price, a general practitioner, physician for the defendant railroad, who was still treating plaintiff at the time of trial, stated that, at the time of trial, he considered plaintiff unable to return to his work, and that he would never be fit for anything but sedentary work.
Dr. Edward W. Phillips, Jr., an orthopedic surgeon, who followed plaintiff along with Dr. Price from the date of the accident to about April of 1965, felt, at that time, that plaintiff had a permanent partial disability of fifteen per cent; that he could not then perform heavy labor, but that he might be of some value in light activity; that he might be able to return to his previous work in possibly six months. He saw plaintiff again in January of 1966, and was .still of the opinion regarding fifteen per cent overall disability. He also felt that plaintiff was capable of light activity and “very possibly could resume his normal activities”. He agreed, however, that plaintiff’s injury was severe; that he was not the same man mechanically that he had been, and that there was no feasible medical treatment available that would improve or cure plaintiff’s condition; that work requiring lifting or climbing would not be good for plaintiff. He had no specific information concerning the duties required of plaintiff in his former job.
Defendant contends that the testimony of Dr. Phillips should be given the greatest weight, since he saw plaintiff approximately two dozen times. Considering all of the medical evidence, we are of the view that there is no substantial conflict therein, and that plaintiff is unable to perform the same work he was doing for defendant prior to the accident, as well as any other manual labor.
The lower court awarded $10,000.00 (reduced proportionately by the contributory negligence) for plaintiff’s personal injury, pain and suffering. This is perhaps a conservative figure, but we find it not manifestly inadequate.
Lastly, we come to .the question of plaintiff’s loss of earnings and earning capacity. The lower court awarded a total of $17,500.00 (again proportionately reduced) and with that figure we cannot agree, for the following reasons:
The evidence is clear that for the year 1963 and up to the time of the accident in 1964, plaintiff averaged approximately $485.00 per month. He was 59 years of age at the time of the accident, had been engaged in railroad work for manyyears, admittedly performed his job quite adequately, and had no plans for discontinuing the employment.
It is further substantiated without contradiction that railroad employees such *680 as plaintiff were not required to retire at any particular age. Plaintiff’s co-worker, a Mr. Gass, was 72 years old at the time of plaintiff’s accident. While it cannot be said that plaintiff would also have worked to or beyond that age, it is within the discretion of this Court to make an assessment for lost earning capacity on the basis of the circumstances. Penn v. Inferno Manufacturing Corporation (La.App., 1 Cir.1967), 199 So. 2d 210, and cases cited therein.
Accordingly, we feel justified in concluding that, under the evidence presented, plaintiff would have continued his employment for approximately another ten years, which would be well within his life expectancy at age 59, and not unusual in the railroad industry.
We, therefore, feel that dating from the time of the accident and going forward ten years, more or less, and without attempting to apply any precise mathematical formula (see Penn v. Inferno Manufacturing Corporation, supra) the sum of $25,000.00 would more justly and realistically compensate plaintiff for lost earnings and earning capacity.
For the reasons assigned, the judgment of the lower court is amended by increasing it to the sum of $35,090.00 (which includes medical expense of $90.00 personally incurred by plaintiff) which amount is proportionately reduced for plaintiff’s contributory negligence to the net sum of $17,-545.00, and as amended, the judgment of the lower court is affirmed. Appellant to pay costs of this appeal.
Amended and affirmed.